UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Yudelka Perez,

            Plaintiff

-against-

Isabella Geriatric Center, Inc.

            Defendant

CIVIL ACTION NO.:_____

COMPLAINT

**JURY TRIAL DEMANDED**

---

## INTRODUCTION

1. Plaintiff, Yudelka Perez, ("Perez" or "Plaintiff") by her attorneys, brings this action against Defendant, Isabella Geriatric Center, Inc. ("Isabella") for disability discrimination and retaliation in violation of the Americans with Disabilities Act Amendments Act, 42 U.S.C. §12101 et seq. ("ADAAA"); the New York State Human Rights Law, Article 15, § 290 *et seq.* ("State HRL"); and the New York City Administrative Code § 8-107 *et seq.* ("City HRL"); and 29 U.S.C. § 2601 et seq. ("FMLA") and submits this Complaint and alleges upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, as follows:

## THE PARTIES

2. Plaintiff, Yudelka Perez, is an individual and at all times mentioned herein resided in Westchester County in the State of New York.

3. Defendant Isabella is a domestic not-for-profit corporation with its principal place of business located at 515 Audubon Avenue, New York, NY 10040.

4. Isabella operates a 705 bed nursing home located in two physically connected buildings in northern Manhattan with the address of 515 and 525 Audubon Avenue.

1

5.  According to its Annual Report for 2012, the year that Perez's employment with Isabella terminated, 1,137 employees worked at Isabella in 2012.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over the action under 42 U.S.C. §§ 12101 *et seq.* and under 28 U.S.C. §§ 1331 and 1343(4).

## PROCEDURAL REQUIREMENTS

7.  Plaintiff filed a timely Charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") and brings this action within ninety (90) days of receipt of a Notice of Right to Sue, issued by the EEOC on February 3, 2015, a true and accurate copy of which is attached hereto as Exhibit A.

## FACTUAL BACKGROUND

8.  Perez worked at Isabella in the Nursing Department as a Certified Nursing Assistant ("CNA") from September 2005 to June 2012. In addition to her duties as a CNA, Perez began working as an Oxygen Attendant in October of 2007.

9.  In November of 2005, Perez became a full-time employee of Isabella, scheduled to work thirty-seven and one-half (37.5) hours each week.

10. Perez was qualified to hold the position of CNA/Oxygen Attendant.

11. Perez is a disabled individual within the meaning of the ADAAA, the State HRL and the City HRL.  She suffers from anemia.  Some of the symptoms include, but are not limited to, shortness of breath, dizziness, hypertension, nausea, pain and tingling in her arms.  This condition substantially limits Perez's major life activities including, but not limited to, walking, standing for long periods of time, sleeping, and climbing stairs.

12. Isabella knew of Perez's disability.

13. Perez's last day of work at Isabella was June 29, 2012. That day she complained to two Isabella employees, Mejias and Palmer that she was not feeling well enough to work because she was dizzy, light headed, and had high blood pressure. Johnson, the charge nurse on the floor where she was working, was also made aware of Perez's condition.

14. Later that day, Perez was attending to a resident. Perez's symptoms of dizziness became worse and her blood pressure increased yet again. Perez informed her co-worker, Palmer, who was in the room with her at the time, that she was not feeling well and needed to go see her doctor.

15. Perez proceeded to Isabella's Nursing Department ("ND") office and requested leave to go see her doctor.

16. When Perez was examined by her doctor on that date, June 29, 2012, Perez's physician established that she had severe palpitations with severe hypertension and would be unable to work until July 5, 2012.

17. Isabella received a faxed copy of the physician's diagnosis and leave request that same day. One of Isabella's employees who worked in the ND office confirmed to Perez that they did receive the physician's note.

18. These Isabella employees confirmed being notified by Perez that she was ill; that she had to see her doctor; and that there was a resident whom she was attending to who would need coverage once she left. Moreover, Perez's co-worker, Palmer, stayed in the room with the resident when Perez left.

19. Palmer was in the room with Perez at the time that Perez became too ill to work. Palmer confirmed that Perez did not leave a resident unattended because she, Palmer, was in the resident's room. Further, another CNA came to assist with the resident as well.

20. Mejias, a nurse on the floor, also stated that Perez came to her so that Mejias could check Perez's vitals, which were abnormal, once again. Mejias confirmed that Perez notified her that she was leaving to see her doctor. Additionally, Perez informed Mejias that she had been helping a resident in a room who was now with Palmer.

21. Perez did not leave a resident unattended.

22. Perez did not walk off her assignment; she requested leave and followed her usual procedure in informing the ND that she needed to leave early because she had to go see her doctor.

23. However, Perez was not allowed to return to work and was terminated by Isabella on July 12, 2012.

24. Isabella's alleged reason for termination was "walking off assignment" on June 29th 2012.

25. Perez was terminated while on leave from Isabella. Isabella failed to accommodate Perez's seven (7) day medical leave request from June 29, 2012 to July 5, 2012.

26. Further, Isabella failed to grant Perez's reasonable accommodation request of several days off, a short duration leave, which would allow her to then continue performing the essential duties of her job.

27. Isabella employs fifty (50) or more employees within a seventy-five (75) mile radius.

28. Perez was an "eligible" employee under the FMLA when she requested her medical leave of absence, as she had been employed by Isabella for at least twelve (12) months and worked at least 1,250 hours within the previous twelve (12) months.

29. The FMLA defines an "employer" to include "any person who acts, directly or

4

indirectly, in the interest of an employer to any employees of such employer." 29 U.S.C. §2611(4)(A)(ii)(i).

30. As a proximate result of Isabella's discrimination against Perez on the basis of her disability, she suffered and continues to suffer substantial losses, including past and future earnings, health and pension contributions, and other employment benefits.

31. As a further proximate result of Isabella's actions, Perez has suffered and continues to suffer impairment and damage by Isabella to her good name and reputation.

32. As a further proximate result of Isabella's actions, Perez has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, loss of reputation, and other incidental and consequential damages and expenses.

33. The conduct of Isabella was outrageous and malicious, was intended to injure Perez, and was done with reckless indifference to her protected civil rights, entitling her to an award of punitive damages.

### AS AND FOR THE FIRST CAUSE OF ACTION
### Discrimination and Retaliation in Violation of the
### Americans with Disabilities Act Amendments Act

34. Plaintiff realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

35. Perez is a disabled individual within the meaning of the ADAAA. She suffers from anemia. Some of the symptoms include but are not limited to, shortness of breath, dizziness, hypertension, nausea, pain, and tingling in her arms. This condition substantially limits Perez's major life activities including but not limited to walking, standing for long periods of time, sleeping, and climbing stairs.

36. At all times relevant hereto Perez was a disabled individual pursuant to the ADAAA.

37. Perez was able to perform the essential functions of her job, and Isabella did not complain of her performance.

38. Perez was discriminated against by Isabella based on her disability in violation of the ADAAA.

39. Isabella's articulated reason for termination: that Perez walked off assignment on June 29, 2012 and left a resident unattended was pretextual.

40. Perez did not walk off assignment and did not leave a resident unattended.

41. Perez contacted Isabella and requested a brief, seven (7) day medical leave for her disability and sent a doctor's note to Isabella in support of her request.

42. Isabella was on notice of Perez's request for accommodation in the form of a brief leave from June 29, 2012 to July 5, 2012.

43. Isabella refused Perez's requested accommodation of a brief leave and summarily terminated Perez rather than engage in an interactive process in an attempt to find a reasonable accommodation.

44. Upon information and belief, Isabella would not suffer undue hardship in accommodating Perez.

45. Isabella was aware of Perez's condition.

46. Perez was discriminated against by Isabella based on her disability in violation of the ADAAA.

47. During Perez's seven-year tenure her performance was outstanding. She received annual Perfect Attendance recognition awards including and one for perfect attendance in 2011

6

and an Acknowledgement for commitment, dedication and caring during the difficult Hurricane Irene staffing issues.

48. On or about July 12, 2012 Isabella terminated Perez because of her disability and accommodation request in violation of the ADAAA.

49. Section 503(a) of the ADAAA prohibits retaliation against individuals who engage in protected activity under the ADAAA, including the protected activity of requesting an accommodation for a disability. 42 U.S.C. § 12203.

50. Furthermore under section 503(b) of the ADAAA it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by" the ADAAA." *Id.*

51. Isabella violated both subsections 503(a) and 503(b) by interfering with Perez's exercise of her rights under the ADAAA and discriminating against her in retaliation for her request for an ADAAA accommodation.

52. As a proximate result of Isabella's actions against Perez on the basis of her disability and request for accommodation, she suffered and continues to suffer substantial losses, including past and future earnings, health and pension contributions, and other employment benefits.

53. As a further proximate result of Isabella's actions, Perez has suffered and continues to suffer impairment and damage to her good name and reputation, humiliation and anguish, severe and lasting embarrassment, and other incidental and consequential damages and expenses.

54.     The conduct of Isabella was outrageous and malicious, was intended to injure Perez and was done with reckless indifference to her protected statutory rights, entitling her to an award of punitive damages.

## AS AND FOR THE SECOND CAUSE OF ACTION
## Discrimination and Retaliation in Violation of the
## N.Y. State Human Rights Law, Article 15

55.     Plaintiff realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

56.     Perez is disabled within the definition of the State HRL § 292(21). At all times relevant hereto Perez was a disabled individual within the definition of the State HRL.

57.     Isabella discriminated against Perez based on her disability in violation of the State HRL.

58.     Isabella refused Perez's requested accommodation of a brief leave and summarily terminated Perez rather than engage in an interactive process in an attempt to find a reasonable accommodation.

59.     Isabella's articulated reason for termination: that Perez walked off assignment on June 29, 2012 and left a resident unattended was pretextual.

60.     Upon information and belief, Isabella would not suffer undue hardship in accommodating Perez.

61.     Isabella terminated Perez because of her disability and accommodation request in violation of the State HRL, § 296(1) and (3).

62.     Section 296 (7) of the State HRL states in relevant part: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to

retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article."

63. Isabella violated section 296(7) when it terminated Perez's employment in retaliation against her because of her request for an accommodation of her disability.

64. As a proximate result of Isabella's actions against Perez on the basis of her disability and request for accommodation she has suffered and continues to suffer substantial losses, includin past and future earnings, health and pension contributions, and other employment benefits.

65. As a further proximate result of Isabella's actions, Perez has suffered and continues to suffer impairment and damage to her good name and reputation, humiliation and anguish, severe and lasting embarrassment, and other incidental and consequential damages and expenses.

### AS AND FOR THE THRID CAUSE OF ACTION
### Discrimination and Retaliation in Violation of the
### N.Y. City Human Rights Law, Title 8 of the Administrative Code

66. Plaintiff realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

67. Perez is disabled within the definition of the City HRL § 8-102. At all times relevant hereto Perez was a disabled individual within the definition of the City HRL.

68. Isabella discriminated against Perez based on her disability in violation of the City HRL §8-107(1)(a) and (15)(a).

69. Isabella failed to grant Perez's reasonable accommodation request in violation of the City HRL.

70. Moreover Isabella refused to engage in the interactive process in an attempt to accommodate Perez's disability and instead summarily terminated Perez when she requested an accommodation.

71. Isabella's reason for discharging Perez was a pretext and in violation of the City HRL.

72. Isabella's termination of Perez because of her disability and accommodation request was in violation of the City HRL.

73. Section 8-107(7) of the City HRL prohibits retaliation and/or discrimination against any person who engages in protected activity under the City HRL, including the protected activity of requesting an accommodation for a disability.

74. Section 8-107(19) of the City HRL states in relevant part: "Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of . . . any right granted or protected pursuant to this section."

75. Isabella violated § 8-107(7) and (19) by interfering with Perez's exercise of her rights under the City HRL and discriminating against her in retaliation for requesting to exercise her rights under the City HRL.

76. As a proximate result of Isabella's actions against Perez on the basis of her disability and request for accommodation, she suffers and continues to suffer substantial losses, including past and future earnings, health and pension contributions,, and other employment benefits.

77. As a further proximate result of Isabella's actions, Perez has suffered and continues to suffer impairment and damage to her good name and reputation, humiliation and anguish, severe and lasting embarrassment, and other incidental and consequential damages and expenses.

## AS AND FOR THE FOURTH CAUSE OF ACTION
### Interference and Retaliation under the
### Family and Medical Leave Act

78. Plaintiff realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

79. Section 102(a)(1)(D) of the FMLA, requires that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

80. Section 105(a) of the FMLA, protects employees in the exercise of these rights: "(1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title. (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a).

81. On June 29, 2012, when Perez asked for a seven (7) day leave because of her medical condition, she had worked for Isabella for more than one year. Moreover Perez had worked more than 1250 hours during the previous year.

82. Isabella employed 1,137 employees at the location where Perez worked—far more than the fifty employees required for FMLA eligibility.

83. Perez's faxed note to Isabella from her doctor, which stated that she needed a medical leave for seven days (7), from June 29 to July 5, 2012, alerted Isabella that Perez was requesting leave for a serious health condition.

84. Isabella interfered with Perez's exercise of her rights under the FMLA and discriminated against her in retaliation for her request for FMLA leave.

85. As such, Perez has been damaged as set forth herein.

86. As a proximate result of Isabella's interference with Perez's exercise of her rights under the FMLA and its discrimination against her when she tried to exercise these rights she suffered and continues to suffer substantial losses, including past and future earnings, health and pension contributions, and other employment benefits.

87. Isabella's violation of the FMLA was willful in that it either knew that its actions violated Perez's rights under the FMLA or acted with reckless disregard as to whether it violated Perez's rights under the FMLA.

88. Because Isabella's violation was willful, under section 107(c)(2) of the FMLA, 29 U.S.C. § 2617(c)(2), a three year statute of limitations applies.

**WHEREFORE**, Plaintiff prays that this Court grant judgment to her containing the following relief:

1. An award of Plaintiff's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating Plaintiff for loss of future salary and benefits;

2. An award of damages in an amount to be determined at trial to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

3. An award of punitive damages;

4. An award of liquidated damages and interest under the FMLA

5. An award of reasonable attorneys' fees and the costs of this action; and

6. Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demands a trial by jury on all causes of action and claims with respect to which she has a right to a jury trial

Dated: April 30, 2015

HARRISON, HARRISON & ASSOCIATES

_____
David Harrison, Esq.
Julie Salwen, Esq.
*Attorneys for Plaintiff*
110 State Highway 35, 2nd Floor
Red Bank, NJ 07701
Telephone: 718-799-9111
Facsimile: 718-228-9171
Email: nycotlaw@gmail.com


Law Office of Olga Medyukh, PLLC

/s/ Olga Medyukh_____
Olga Medyukh
*Attorneys for Plaintiff*
7701 Bay Parkway, 1st Floor
Brooklyn, New York 11214
Telephone: 718-758-4634
Facsimile: 718-228-8554
Email: omedyukh@gmail.com

# EXHIBIT A

EEOC Form 161 (11/09)              **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Yudelka Perez<br>215 Willow Street<br>2nd Floor<br>Yonkers, NY 10701 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2013-01165 | Donna M. Walcott<br>Senior Investigator | (212) 336-3679 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

- NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)                     *Kevin J. Berry*                       FEB 03 2015
                                  Kevin J. Berry                         (Date Mailed)
                                  District Director

cc:
ISABELLA GERIATRIC CENTER                    **CHARGING PARTY'S ATTORNEY**
**Respondent's Representative**              Olga Medyukh, Esq.
Eileen Casey                                 LAW OFFICE OF OLGA MEDYUKH, PLLC
V.P. of Human Resources                      2500 65th Street
515 Audubon Ave                              Brooklyn, NY 11204
New York, NY 10040

Enclosure with EEOC
Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

**IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.**